UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**DAVID ALLAN CRABTREE,** and
**TERRI DAWN CRABTREE**,

Debtors.

Case No. **07-60543-13**

## *MEMORANDUM of DECISION*

At Butte in said District this 12th day of October, 2007.

In this Chapter 13 bankruptcy, after due notice, a hearing was held August 30, 2007, in Billings on confirmation of Debtors' Chapter 13 Plan dated May 10, 2007. The Chapter 13 Trustee, Robert G. Drummond of Great Falls, Montana, appeared at the hearing in opposition to confirmation of Debtors' Chapter 13 plan, while Debtors' attorney of record, Craig D. Martinson of Billings, Montana, appeared in support of confirmation of Debtors' Chapter 13 plan. Debtor David Allan Crabtree ("David") testified in support of Debtors' Chapter 13 Plan and Debtors' Exhibit A was admitted into evidence without objection. This memorandum contains the Court's findings of fact and conclusions of law.

BACKGROUND

The few facts in this case are relatively straight forward. The Debtors, David and Terri Crabtree, own a home in Absarokee, Montana. The Debtors are still married but live in separate households. Debtor David Crabtree ("David") testified that he moved out of Debtors' home in August of 2006 and moved into an apartment in October of 2006. Debtor Terri Crabtree

("Terri") continues to live in Debtors' family home with Debtors' three children.  Terri has a boyfriend and David testified that there is absolutely no chance of reconciliation between himself and Terri.  David and Terri are still legally married only because neither David nor Terri can afford to file a divorce proceeding at this time.

David lives in an apartment that is located approximately 30 miles from Stillwater Mine, where David is employed as a mine foreman.  David pays $600.00 per month in rent for his apartment, which amount includes all utilities.  Terri is employed as a teacher's aide during the school year and thus does not work during the summer months.  Notwithstanding Terri's employment, David testified that he supports both households at this time.

On the joint Schedule I filed with their bankruptcy petition, Debtors reported their combined monthly gross income as $6,363.17.  Debtors filed separate Schedule J's.  The first Schedule J lists monthly expenses as $4,054.33, which appear to be all the expenses paid by David, including his rent and the mortgage and utilities associated with Debtors' home.  The second Schedule J lists monthly expenses of $1,845.00, which appears to be the food and clothing expenses and other expenses paid by Terri, leaving between David and Terri, monthly net income, per Schedules I and J, of $463.84.

On the Amended Form 22C filed July 23, 2007, Debtors checked the boxes on the top of the first page indicating that their applicable commitment period is 5 years and that their disposable income is determined under 11 U.S.C. § 1325(b)(3).  Debtors report their combined "current monthly income for § 1325(b)(3)" as $7,397.99.  At Part III "Application of § 1325(b)(3) for Determining Disposable Income", Debtors disclose at Line 21 that their annualized current monthly income of $88,775.88 exceeds the applicable median family income

2

for a family of five in the amount $61,941.00 as determined at www.usdoj.gov/ust. After calculating their allowable deductions in Part IV, Debtors' Form 22C reflects on line 58 monthly disposable income under § 1325(b)(2) of $341.96.

## CONTENTIONS OF THE PARTIES

The Trustee raises three objections to confirmation of Debtors' Chapter 13 Plan. First, the Trustee asserts that Debtors are failing to commit all their disposable income to their Chapter 13 Plan as required by 11 U.S.C. § 1325(b). Second, the Trustee argues that Debtors should not be allowed to deduct an additional $600.00 expense on Form 22C solely on the basis that Debtors do not live together. Finally, the Trustee maintains that Debtors have deviated from the standard form of plan required by Mont. LBR 9009-4(b) because Debtors' Plan provides in paragraph 5 the phrase "as defined by 11 U.S.C. § 1325(b)(1)(B)," which phrase does not appear in the standard form of Chapter 13 plan found at Mont. LBF 19.

Debtors' counsel stated at the hearing that he would amend Debtors' Chapter 13 Plan to cure the Trustee's third objection, namely, that Debtors' Plan does not conform to the standard form of Chapter 13 plan used in this District. Debtors' counsel also stated at the hearing that he filed an Amended Form 22C on July 23, 2007, to include a $25.00 payment on priority claims and a deduction of $33.41 per month for the Trustee's monthly fee. Debtors amended their Form 22C to cure the Trustee's disposable income objection. Thus, Debtors argue that the only issue left for the Court to decide is whether Debtors can claim a $600.00 expense on line 26 of Form 22C as an adjustment for housing and utilities.

## APPLICABLE LAW

It is well-established law in this Circuit that for a bankruptcy court to confirm a plan,

3

"each of the requirements of section 1325 *must be present* and the debtor has the burden of proving that each element has been met." *In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995); *Chinichian v. Campolongo*, 784 F.2d 1440, 1443-44 (9th Cir.1986) (citing *In re Elkind*, 11 B.R. 473, 476 (Bankr.D.Colo.1981)) (emphasis added).  *See also, Ho. V. Dowell (In re Ho)*, 274 B.R. 867, 883 (9th Cir. BAP 2002) (under § 1325(a)(3), the debtor has the burden of proving good faith).

As this Court has discussed on prior occasion, the disposable income test of § 1325(b) underwent substantial revision in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8) ("BAPCPA").  BAPCPA was signed into law on April 20, 2005, and with certain exceptions, is applicable to cases commenced after October 16, 2005.  The instant bankruptcy case was commenced on May 24, 2007, and is thus clearly governed by the Bankruptcy Code, as amended by BAPCPA.

BAPCPA substantially modified the disposable income test of § 1325(b) in the following manner: (1) disposable income [current monthly income] is determined by the debtor's average monthly income received within the six-month period ending on the last day of the calendar month immediately preceding the date of the commencement of bankruptcy petition (*see* §§ 1325(b)(2) and 101(10A)); (2) for debtors with income above the applicable state's median income, amounts reasonably necessary to be expended are determined as the debtor's applicable monthly expense amounts specified under the IRS National and Local Standards and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses for the area in which the debtor resides on the date of filing (*see* §§ 1325(b)(3) and 707(b)(2)(A) and (B)); and (3) projected disposable income, multiplied by the applicable commitment period is the amount

4

to be paid to unsecured creditors, §§ 1325(b)(1)(B) and 1325(b)(4)(B).

Congress defined the term "current monthly income" ("CMI"), as set forth in § 1325(b)(2) at § 101(10A) as the average monthly income from all sources, with some exceptions, that the debtor receives during the 6-month period ending on the last day of the calendar month immediately preceding the date of the commencement of debtor's bankruptcy case.  CMI excludes Social Security benefits or payments to victims of war crimes, of crimes against humanity or terrorism, and in the context of a chapter 13 bankruptcy (*see* § 101(10A)(B)), also excludes alimony, child support, foster care, and child disability payments (§ 1325(b)(2)).  CMI is calculated by having all debtors complete lines 1-23 of Form 22C, with the result being listed on line 21 as the debtor's "[a]nnualized current monthly income for § 1325(b)(3)."  The term "disposable income" is defined at § 1325(b)(2) and is determined differently depending on whether the debtor's income is above or below the applicable median family income as determined by the debtor's place of residence and household size.  If a debtor's annualized current monthly income, as set forth on Line 21 of Form 22C, is greater than the applicable state's median income for a household of the same size, reasonably necessary expenses are calculated using the "Means Test" of § 707(b)(2)(A) and (B).  However, if a debtor's annualized current monthly income is less than the state's applicable median income, the debtor is finished with Form 22C and proceeds to list income and expenses on Schedules I and J.

The instant case focuses on one specific category of current expenditures, i.e., housing. The following language of § 1325(b)(2) plainly states its intent:  "For purposes of this subsection, 'disposable income' means ...."  To understand the scope of the words "this subsection" at the beginning of § 1325(b)(2), reference is simply made to § 1325(a) which begins

"Except as provided in *subsection (b)*." (Italics added). In order to give effect to all the pertinent statutory language, this Court reads "this subsection" in § 1325(b)(2) to mean all of subsection 1325(b), both § 1325(b)(1)(B) and § 1325(b)(2), and thus "disposable income" is defined at § 1325(b)(2) for purposes of determining "projected disposable income" under § 1325(b)(1)(B) to decide the disposable income test. *See, e.g., In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D. N.C. 2006) ("If 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose."). This Court's construction gives effect to "disposable income" in both §1325(b)(1)(B) and § 1325(b)(2) in the manner which avoids rendering one superfluous. *Connecticut National Bank v. Germain*, 503 U.S. at 252-54, 112 S.Ct. at 1149; *Rake v. Wade,* 508 U.S. at 471-72, 113 S.Ct. at 2192.

As previously mentioned, § 1352(b)(3) imposes what a leading commentator describes as "[p]erhaps the most dramatic changes in the disposable income test" by application of the § 707(b) means test expense calculations. 8 COLLIER ON BANKRUPTCY ¶ 1325.08[5][c][i] (15th ed. 2006). Section 1325(b)(3) provides:

> Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than –
>
> * * *
>
>   (C) in the case of a debtor in a household exceeding 4 individuals,
>   the highest median family income of the applicable State for a
>   family of 4 or fewer individuals, plus $525 per month for each
>   individual in excess of 4.

The Trustee and Debtors agree that Debtors are above-median income debtors. COLLIER explains:

6

> New section 1325(b)(3) provides that for debtors with current monthly income above the applicable state median income for their household size, reasonably necessary expenses are to be calculated using the means test formula in section 707(b)(2)(A) and (B) in order to determine payments to unsecured creditors.

COLLIERS, ¶ 1325.08[5][c][i].

*In re Barr*, 341 B.R. 181, 185 (Bankr.M.D.N.C. 2006), explains: "The use of 'shall' in section 1325(b)(3) is mandatory and leaves no discretion with respect to the expenses and deductions that are to be deducted in arriving at disposable income." The court found the language of § 1325(b)(3) unambiguous and enforced it according to its terms requiring that the expenses of above-median income debtors be determined under § 707(b)(2)(A) and (B). *Id.*, citing *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) ("When the language of a statute is plain, the sole function of the courts is to enforce the statute according to its terms unless the disposition required by the text is absurd"); *see also Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (in turn quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917))). In an earlier reported decision, this Court concurred with *Barr* and *Hardacre* and held that the expenses of above-median debtors' must be determined in accordance with the mechanical "means test" set forth in § 707(b). *In re Tranmer*, 355 B.R. 234 (Bankr. D. Mont. 2006).

The Trustee and Debtors agree that Debtors' income is above Montana's median income for a family of five. Thus, Debtors' disposable income is, by statute, determined by Form 22C and not Debtors' Schedules I and J. In addition, Debtors do not dispute this Court's application

of the mechanical test, but instead argue that Debtors' living arrangement is a special circumstance that warrants consideration of additional expenses under § 707(b)(2)(B), which reads:

> (B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.
>
> (ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide--
>
> > (I) documentation for such expense or adjustment to income; and
> >
> > (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
>
> (iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

The above-quoted subsection allows debtors to rebut the presumption of abuse "by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative", § 707(b)(2)(B)(i), provided the presumption of abuse is rebutted if the additional expenses cause the product of the debtor's current monthly income when multiplied by 60 to be less than the distinct trigger points of § 707(b)(2)(B)(iv). This subsection is applicable in determining amounts reasonably necessary to be expended by the plain language of § 1325(b)(3), and so the Court will apply that test to Debtors' $600.00 adjustment for housing.

In *In re Tuss*, 360 B.R. 684 (Bankr. D.Mont. 2007), this Court declined to adopt the

separate and parallel analysis described in *In re Jass*, 340 B.R. 411, 418 (Bankr. D. Utah 2006), where the court presumed the number from Form B22C is the debtor's "'projected disposable income' unless the debtor can show that a substantial change in circumstances has occurred such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future." The court in *Jass* acknowledged that § 707(b)(2)(B) allows a debtor to rebut the presumption of abuse where the debtor can demonstrate special circumstances, which the court described as "similar to the Court's inquiry into whether a substantial change in circumstances exists." *Jass*, 340 B.R. at 418. The court also stated that it would look to the analysis required by § 707(b)(2)(B) for guidance whether a debtor has met his or her burden to show a substantial change in circumstances, and that a debtor attempting to meet that burden should present documentation similar to that required by § 707(b)(2)(B). As noted in *Tuss*, the Court found no statutory authorization for the *Jass* court's "substantial change in circumstances" exception to the means test, and declined to adopt that separate test.

In considering special circumstances, this Court looks directly to § 707(b)(2)(B), as specifically authorized by § 1325(b)(3), requiring itemized documentation of expenses and a detailed explanation of the "special circumstances" that justify the additional expenses for which there is no reasonable alternative. *In re Demonica*, 345 B.R. 895, 903 (Bankr. E.D. Ill 2006). After much consideration, the Court concludes that Debtors' evidence of special circumstances satisfies § 707(b)(2)(B).

In reaching this decision, the Court found the case of *In re Graham,* 363 B.R. 844 (Bankr.S.D.Ohio 2007), instructive. Although *Graham* was a Chapter 7 case that addressed whether the case should be dismissed for abuse under § 707(b)(2)(A), the court stated as an

9

alternate holding that the maintenance of two separate households amounted to special circumstances.  In *Graham,* one of the joint debtors was unable to find gainful employment in Ohio but did find work in Virginia.  *Id.* at 847.  The other joint debtor was unable to relocate because custody in her Shared Parenting Plan was contingent upon her staying in the area. *Id.* at 847.  Mr. Graham scheduled his second household expenses simply as household expense, and the court held that nothing in the code prohibited joint debtors from having two sets of household expenses.  *Id.* at 849. The court in *Graham* went on to conclude as noted, that the expenses were justified by special circumstances.  *Id.* at 849. The U.S. Trustee in the case argued that special circumstances were limited to those items outside of the debtors' control, but the Court disagreed stating that "[n]othing in the statute suggests or mandates that the 'special circumstances' be outside of the control of the debtor." *Id.* at 850.

 In this case, Debtors have appropriately itemized the expense; namely, the $600.00 per month rent payment that David pays.  Second, Debtors have documented the adjustment.  In particular, Exhibit A, a copy of David's lease agreement, was entered into evidence without objection.  Finally, the Court finds that Debtors' irreconcilable differences in their marriage make it reasonable for Debtors to live in separate homes.  Thus, maintaining separate homes under the facts of this case is the type of special circumstance contemplated by § 707(b)(2)(A).

 The Court presumes that Debtors could avoid the Trustee's objection by simply bifurcating their cases, pay an additional fee, file separate schedules and statements and other necessary forms and file separate Form 22C's and Chapter 13 plans, but that would merely elevate form over substance and Debtors should not have to go through such machinations solely because they cannot afford to finally and permanently dissolve their marriage at this time.

Therefore, consistent with this Memorandum of Decision, the Court will enter a separate Order providing as follows:

IT IS ORDERED that confirmation of Debtors' Chapter13 Plan dated May 10, 2007, is DENIED; Debtors shall have ten (10) days from the date of this Order to file an amended Chapter 13 Plan that conforms to this Court's standard form of Chapter 13 plan found at Mont. LBF 19; and a hearing on confirmation of Debtors' amended Chapter 13 plan shall be held on **Thursday, November 8, 2007, at 09:00 a.m.**, or as soon thereafter as the parties can be heard, in the 5TH FLOOR COURTROOM, FEDERAL BUILDING, 316 NORTH 26TH, BILLINGS, MONTANA.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana